IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JEAN McCARTER, DENNIS McCARTER,
MARJORIE CZECHOWICZ, THOMAS W.
CZECHOWICZ, JAMES J. MUCK, SHERRY
MUCK, WAYNE C. DUDDLESTON, and
JEAN DUDDLESTON, on behalf of themselves
and all others similarly situated,

               Plaintiffs,

       v.

RETIREMENT PLAN FOR THE DISTRICT
MANAGERS OF THE AMERICAN FAMILY
INSURANCE GROUP, RETIREMENT PLAN
FOR EMPLOYEES OF AMERICAN FAMILY
INSURANCE GROUP and AMERICAN
FAMILY MUTUAL INSURANCE GROUP,

               Defendants.

OPINION AND ORDER

3:07-cv-00206-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is a civil action for declaratory, injunctive and monetary relief brought pursuant

to the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461, by plaintiffs

Jean McCarter, Dennis McCarter, Marjorie Czechowicz, Thomas W. Czechowicz, James J.

Muck, Sherry Muck, Wayne Duddleston and Jean Duddleston against defendants

Retirement Plan for the District Managers of the American Family Insurance Group,

1

Retirement Plan for Employees of American Family Insurance and American Family Mutual Insurance Group.  (For all practical purposes the only defendant is American Family Mutual Insurance Group, which I will refer to simply as defendant for the balance of this opinion.).

Plaintiffs are either former employees or spouses of former employees of defendant who were terminated before reaching the normal retirement age of 65.  Under defendant's defined benefit retirement plans, the participant-plaintiffs had a choice of pension benefit payment options upon termination.  They could select a lump sum distribution that was the actuarial equivalent of the plan member's accrued pension benefit or they could choose one of several annuities.  If they chose the lump sum distribution, they had to make the election within 90 days of their termination date.  They could not choose to defer the distribution of the funds.  All of the participant-plaintiffs chose the immediate lump sum distribution and now contend that their consent to do so was invalid because it was coerced, with the coercion consisting of the potential loss of that option if they postponed their decision.

As I understand plaintiffs' claim, it is the following.  Participants in the plans who elect immediate distribution have more options than those who elect to defer the distribution of benefits.  This differential imposes a significant detriment on persons who do not elect such immediate distribution, which has the effect of coercing them into selecting the lump sum payment and thus invalidating the consent of anyone who agrees to immediate distribution.  Such coercion violates ERISA and entitles plaintiffs (and everyone similarly

2

situated) to benefits in whatever form they choose at their normal retirement date or at any date before their normal retirement date that is within 90 days of their election to receive the distribution.  Furthermore, because the distributions made to plaintiffs were based on invalid consents and nothing in ERISA authorizes a benefit plan to recoup payments that were not the result of a mistake or misstatement, plaintiffs do not have to pay back the lump sum distributions they have received.  In response to defendant's argument that the suit is premature because plaintiffs never tried to exhaust the administrative remedies available to them under the Plans, they argue that they were unaware of the remedies and that in any event exhaustion would have been futile.

Defendant denies that having to choose between an immediate lump sum distribution and a deferred annuity is a "significant detriment" as that term is used in Treasury Regulation § 1.411(a)-11.  More to the point, it denies that § 1.411(a)-11 creates a cause of action for plaintiffs under ERISA.  Even if it did, argues defendant, the determination of a significant detriment is a task for the Commissioner of the Internal Revenue Service, who looks at a number of factors in making the determination, including whether a business purpose exists for any alleged differential in treatment among plan participants.  In its case, defendant maintains that it had such a purpose, which was preventing adverse selection to undermine the financial stability of its retirement plans.

Defendant has three additional defenses:  (1) plaintiffs lack standing to bring this

3

suit, as none of them alleges that he or she has been harmed in any respect by the decision to choose a lump sum distribution of retirement benefits; (2) plaintiffs are not "qualified plan participants" because they have been paid their benefits in full and no longer have any colorable claim to vested benefits; and (3) the suit is premature because plaintiffs never exhausted the administrative remedies available to them under their respective plans.

The case is before the court on plaintiffs' motion for class certification and on the parties' cross motions for summary judgment. I conclude that the issue of class certification is moot because plaintiffs have not demonstrated that their claim amounts to a case or controversy over which this court can exercise jurisdiction. Although plaintiffs allege in their complaint that they have been injured by having to make their benefit choice at the time they did, they are unwilling to give up the benefits that they received and unable to explain how they have suffered any financial harm. The question of plaintiff's standing is bound up with the merits of their claim. Plaintiffs have not shown that they could prevail on their claim that they were "coerced" into giving up their opportunity to choose a deferred annuity.

From the findings of fact proposed by the parties, I find that the following facts are both material and undisputed.

## UNDISPUTED FACTS

Defendant American Family Mutual Insurance Company is an insurance company

4

incorporated under the laws of the state of Wisconsin.  For more than a quarter-century, it has administered and funded two qualified defined benefit retirement plans for its employees, the Retirement Plan for Employees of the American Family Insurance Group and the Retirement Plan for District Managers of the American Family Insurance Group. Defendant pays the entire cost of the plans.

The plans provide benefits to vested participants upon normal retirement, early retirement, death or termination.  Participants vest when they have completed five years of employment with defendant.

A member in either plan who turns 65 while employed by defendant is eligible to receive a normal retirement benefit, which the member begins receiving immediately upon retirement.  A member in either plan who reaches 50 with at least 15 years of service is eligible for an early retirement benefit, which begins immediately upon retirement unless the member chooses to defer the commencement until a later date.

A member who is not eligible to receive a normal or early retirement benefit is eligible to receive a deferred vested retirement benefit.  He may not elect early commencement of his benefit but must wait until age 65, unless he chooses to take his benefits as a single lump sum payment or as an immediate annuity.

The annuities available under defendant's plans may be single life (for unmarried employees) or in the form of a Qualified Joint and Survivor Annuity (for married

5

employees).  This annuity is the actuarial equivalent of a single life annuity and provides payments for the lifetime of the member with a survivor annuity for the lifetime of the member's spouse.  A member can choose a survivor annuity that is either 50 percent or 75 percent of the amount of the annuity payable during the joint lives of the member and the spouse.

Before September 1997, all of the benefit options for Plan participants involved a form of monthly annuity payment, with the exception of the mandatory cash-out for Plan participants whose pension benefits had a present value of $3000 or less at termination.  As of September 1, 1997, defendant amended its plans to create two alternative distribution options for all vested plan participants:  a lump sum distribution option and an immediate annuity for members entitled to deferred vested retirement benefits.  The lump sum option enables Plan members to choose to receive a lump sum payment that is the actuarial equivalent of their accrued annuity benefit.  The right to receive this payment is a one-time option that must be exercised within three months following the member's termination of employment.  The immediate annuity is available to all members entitled to deferred vested retirement benefits.  It allows them to choose an annuity that is the actuarial equivalent of the member's accrued benefit.  The immediate annuity begins on the date that the member would receive a lump sum payment if she had elected that option.  It is a single life annuity if the member is unmarried or a Qualified Joint and Survivor Annuity if the member is

6

married on the annuity starting date.  The lump sum distribution option has been particularly popular; 90 percent of eligible plan participants choose it.

When defendant concluded that the lump sum distribution and immediate annuity would be advantageous options for both participants and the company, it decided that three months for selection among options would be sufficient for plan participants to consider their options thoroughly and solicit advice from professionals.  It was important to defendant that the time not be so long that it raised the problem of "adverse selection."

Adverse selection refers to the situation in which participants are able to make more accurate estimates of their individual life expectancies than the plans, which base their lump payment and annuity calculations upon average life expectancies.  For example, a  person who has been diagnosed with a lethal form of cancer has more information than the plans about the best option for him.  In this situation, a lump sum distribution would be likely to pay far more than an annuity option that would be based on the average life expectancy of all persons of his age and sex.  The longer the election window is open, the greater the possibility that plan participants will choose a form of distribution more favorable to them than the averages on which the plans are based and the greater the risk of financial harm to the plans will be.

Interest rates pose another risk of adverse selection.  Defendant's lump sum distribution calculations are based on the rate of return of the 30-year Treasury bond.  The

lower the rate of return of this bond at the time the lump sum distribution is selected, the higher the lump sum and vice versa.  The rate of return used for the distribution is the average monthly rate two months before the distribution.  If participants want to make their lump sum elections in any given month, they must do so by the 15th of the month.  With a two-month "look back" period, participants can time their decision to take their lump sum distributions when the average monthly rate is the lowest.  If defendant allowed plan participants to put off their elections indefinitely, they might be able to track interest rates over longer periods of time and wait to request their lump sum distributions until they believed the rates were at their lowest.  This kind of adverse selection could affect the financial health of the plans.

Plaintiff Jean McCarter worked for defendant from mid-1985 to January 2006, when she was terminated.  She was a participant in both the Employee Plan and the District Manager Plan.  Shortly after her termination, plaintiff McCarter received a letter from defendant explaining her options with respect to her pension benefits.  Among other things, defendant advised her that the lump sum distribution would make her a one-time payment of the value of her benefits, that once it had been made, defendant would no longer provide further payments from the plan to either her or her spouse and that the lump sum distribution option would be available to her until April 7, 2006.

When plaintiff McCarter was terminated, she understood that she had a set period

8

of time in which to select a benefit.  After consulting with a certified public accountant, she chose to receive her pension benefits in a single lump sum distribution so that she could have control of the money.  She filled out a form to this effect in February 2006.  However, in March 2006, she wrote to defendant's employee, Stacy McDaniel, asking to defer her lump sum distribution.  When McDaniel told her that was not possible, plaintiff McCarter advised McDaniel that she wanted to go ahead with the lump sum distribution.  Plaintiff rolled the money over into an IRA and is satisfied with the investment performance.  She never appealed defendant's decision to require her to make her choice within a certain period of time, but she thinks it is unfair for plan participants to have to make the decision before they are 65.

Plaintiff McCarter understood that if she had declined the lump sum distribution, she still had the other annuity options available and that her failure to take the lump sum would not result in the reduction of the value of the annuity she would receive.  Had she been able to make her election later, her lump sum distribution might have been greater or it might have been less, depending on the prevailing interest rates.  Plaintiff does not want to return the money she received as a lump sum distribution.

Plaintiff's husband, plaintiff Dennis McCarter, shares his wife's belief that 90 days is not long enough in which to make a decision about a lump sum distribution.  He thinks plan participants should have the right to make their election at any time.  He would not

9

want to repay defendant the value of his wife's lump sum distribution.

Plaintiff James Muck was born in 1946 and worked for defendant from September 1976 to June 30, 2003, when he was terminated by defendant. He was a participant in the District Manager Plan. He learned about the options for taking his benefits when he left the company and chose the lump sum distribution, which he rolled over into an IRA. He understood that he would not receive any further pension payments if he chose the lump sum distribution. He did not consult any financial adviser before making his decision. He does not want to reverse the decision he made and he is not prepared to pay back the lump sum distribution.

Plaintiff Muck did not appeal defendant's  decision to put a limit on the time he had for deciding whether to take the lump sum distribution. His wife, plaintiff Sherry Muck, did not participate in the decision to take the lump sum distribution but trusted her husband to make the decision to take the lump sum distribution.

Plaintiff Wayne Duddleston was born in 1945 and worked for defendant from March 1969 to February 2004, when he was terminated. He was a participant in the Employee Plan. He chose the lump sum distribution without seeking advice from anyone. He understood when he made his selection that he had 90 days within which to do it and that he would not get any additional payments from defendant if he took the lump sum. He had no concerns at the time about the amount of time he had in which to make the decision.

He does not want to reverse the decision he made to take a lump sum distribution.

When plaintiff Duddleston's employment with defendant ended, he entered into a severance agreement with the company and received a severance payment. As part of the agreement, he released all past and present claims he had against the company.

Plaintiff Jean Duddleston is married to Wayne Duddleston. Although she does not want to reverse her husband's decision to take the lump sum distribution, she believes that she has been injured financially because she has no survivor benefit. She is the named beneficiary on the IRA that her husband purchased with his lump sum distribution.

Plaintiff Marjorie Czechowicz was 49 when she was terminated by defendant in August 2005. She was a participant in the Employee Plan and chose to take the lump sum option, which she has reinvested with the Equitable. She understood at the time that she had 90 days in which to make the choice of benefit payments. She does not want to reverse the decision she made to take a lump sum payment. She and her husband, plaintiff Thomas Czechowicz, believe that they should have had the option of taking a lump sum payment at any time up to age 65.

OPINION

A. <u>Order of Proceeding</u>

At the outset, it is necessary to determine whether plaintiffs' motion for class

11

certification must be resolved before the cross motions for summary judgment. Ordinarily, a court should decide a motion for class certification before ruling on the merits of the case. Fed. R. Civ. P. 23(c) ("As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained."). However, it is also true that "a district court has broad discretion to determine whether certification of a class-action lawsuit is appropriate." Mira v. Nuclear Measurements Corp., 107 F.3d 466, 474 (7th Cir. 1997) (citing Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 596 (7th Cir.1993)). "If 'as soon as practicable' occurs after a case is already 'ripe for summary judgment' then it might be proper for a judge to consider a motion for summary judgment prior to considering a motion for class certification." Chavez v. Illinois State Police, 251 F.3d 612, 629-630 (7th Cir. 2001) (citing Cowen v. Bank of Texas, FSB, 70 F.3d 937, 941 (7th Cir. 1995) (citations omitted)). As the court of appeals noted in Cowen, 70 F.3d at 941, if the court determines that the named plaintiffs' claims have no merit, in most instances the result would be that the named plaintiffs are not proper class representatives, making the issue of class certification a forgone conclusion.

In moving for summary judgment before the motion for class certification has been resolved, the defendant loses the advantage of a judgment that has preclusive effect against all putative suitors but saves the heavy expense of defending against a class action. In this case, defendant prefers a prompt decision on its motion to the benefits of preclusion. Its

12

decision is understandable, given the tenuous merits of plaintiffs' claim.

## B. Cross Motions for Summary Judgment

Before reaching the merits of plaintiffs' claim, it is necessary to determine whether this court has jurisdiction to hear and resolve the claim.  Article III of the Constitution confines the jurisdiction of the federal courts to "cases" or "controversies."  This provision requires persons bringing claims to show that they are not seeking an advisory opinion from the court but that (1) they have suffered an "injury in fact"; (2) a causal connection exists between the injury and the conduct complained of; and (3) it is likely the injury will be redressed by a favorable decision.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); see also Johnson v. Allsteel, Inc., 259 F.3d 885, 887 (7th Cir. 2001).

To allege an actual injury, plaintiffs must show that they have suffered an "invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Id. at 560.  The participant-plaintiffs allege that they were coerced into taking their lump sum distribution within 90 days of their termination and deprived of the opportunity to wait until their normal retirement age to choose the same option or another one.  Yet none of them says he would exchange the option for another.  None of them alleges that he has been harmed financially by choosing

the lump sum option.  One plaintiff-spouse has expressed some regret that she lacks a survivorship benefit because her husband did not choose the deferred annuity.  Even she does not want to take an annuity in exchange for the distribution her husband elected.

In the absence of any evidence or even allegation that plaintiffs consider themselves worse off than they would have been had the distribution options been different, their claim of injury lacks any substance.  This alone would be sufficient to deny them standing, but there is more.

Not only are plaintiffs unable to point to any financial harm they have suffered, they cannot identify any legally protected interest that has allegedly been invaded.  Their efforts to do so lead inevitably to an analysis of their claim, blurring the usual boundaries between standing and the merits of the claim.  Compare American Civil Liberties Union v. F.C.C., 523 F.2d 1344, 1348 (9th Cir. 1975) (noting that usually determination of truth of allegation of injury does not require examination of merits of claim, but not in case before it:  "If the claim is meritorious, standing exists; if not, standing not only fails but also ceases to be relevant."); see discussion in Charles Alan Wright, et al., Federal Practice and Procedure § 3541.4; see, e.g., Johnson, 259 F.3d 885 (court looked at merits of plaintiff's claim against plan administration in determining that plaintiff had suffered actual injury when administrator amended plan unilaterally to provide itself discretionary authority to interpret and construe plan).

14

In evaluating plaintiffs' effort to identify a legally protected interest, it is important to note what plaintiffs are *not* contending. They do not contend that defendant has erred in its calculation of the lump sum distribution, compare Lyons v. Georgia-Pacific Corp. Salaried Employees Retirement Plan, 221 F.3d 1235 (11th Cir. 2000) (class of former employees challenged benefit plan's calculation of consensual lump sum payout, asserting that it should be done in accordance with present value method set out in Treasury regulations §§ 1.411(a)-11 and 1.417(e)-1). They do not contend that they were treated less favorably than other employees who were terminated before their normal retirement age or even from employees who retired at the normal retirement age, compare Rev. Rul. 96-47 (1996) (provision of defined contribution plan invalidated where participant terminating employment early forced to choose between immediate distribution of vested account balance or investment in money market fund rather than wide range of investment alternatives available to continuing employees).

In addition, plaintiffs do not cite anything in ERISA that forbids plan administrators from offering a lump sum benefit option conditioned upon immediate distribution. Instead, they hang their hats on a provision in the Internal Revenue Regulations, 26 C.F.R. § 1.411(a)-11, that implements 26 U.S.C. § 411, which in turn sets the minimum vesting standards required for plans seeking to qualify for favorable tax treatment under § 401 of the Code. Section 1.411(a)-11 specifies that a benefit plan that provides for the distribution of

15

any portion of a participant's non-forfeitable accrued benefits must satisfy the prescribed consent requirements, which include a prohibition on imposing "a *significant detriment . . .* on any participant who does not consent to a distribution." § 1.411(a)-11(c)(2)(i). (Emphasis added.)

Whether, as plaintiffs assert, § 1.411(a)-11 is intended to create a cause of action by plan participants against an employer and its plan is doubtful. The regulation specifies that it shall be up to the Commissioner of Internal Revenue to determine whether a significant detriment is imposed in any particular circumstance, suggesting strongly that the provision is not intended to be a vehicle for suits against employers and plans. Rather, it appears to be a means of determining whether plans qualify for special tax treatment. Assuming, however, that plaintiffs could proceed against defendant under § 1.411(a)-11, they have not shown any substantial detriment that non-consenting participants in defendant's plans would suffer if they declined the lump sum distribution offer.

Plaintiffs assert that it is a "significant detriment" to restrict participants in defendant's plans from deferring their election of the lump sum distribution until such time as they reach the normal retirement age. However, they fall short when they try to explain why this is so. Their difficulty is hardly surprising. The lump sum option is an additional benefit that did not even exist until 1997. Had defendant never implemented the option, plaintiffs would have had to wait until their normal retirement ages to receive any retirement

16

benefits and those benefits would have been limited to annuities of one kind or another.  (In fact, the 1997 changes to the Plans give participants two additional options.  They can take their money in a lump sum immediately upon termination of their employment or elect an immediate annuity even if they have not reached normal retirement age.).

Much as plaintiffs would like to characterize the time limit on their benefit payout election as illegal coercion, no objective observer would agree with the characterization. Plaintiffs say that the popularity of lump sum distributions "has the effect of strongly encouraging participants to elect to take an immediate distribution (in order to be able to elect a lump sum) and strongly discouraging them from electing to defer distribution of their benefits until normal retirement age," Plts.' Br. in Supp. of M. for Summ. Jmt., dkt. #42, at 8, but this is no argument.  "Strongly encouraging" is not the same as imposing a significant detriment upon plan participants.  This is particularly true when the strong encouragement does not come from the employee itself but from the intrinsic appeal of the option.

As the undisputed facts show, plaintiffs' real complaint is that defendant's plans do not let them delay their election of benefits.  Of course, doing so might increase their chances of making the best choice of options for their specific circumstances, which would be nice for plaintiffs.  (Whether it would be better for all plan participants is another question.).  It does not follow, however, that the absence of this opportunity gives plaintiffs

17

a ground for suing defendant.  Wanting a better option does not render the available option a "significant detriment" or otherwise inadequate or illegal.  It is noteworthy that the same provision of the Treasury Regulation that plaintiffs cite for its reference to "substantial detriment," the regulations provide that "a participant must be informed of the right, *if any*, to defer receipt of the distribution. " § 1.411(a)-11(c)(2)(ii).  This is a strong implication of the validity of non-deferrable distributions.

I conclude that plaintiffs cannot cross the threshold into federal court because they have not established any standing to bring this suit.  They cannot show that they have suffered an actual injury to a legally protected interest.  Because the issue of standing rises or falls on the merits of their claim, I conclude as well that plaintiffs have failed to state a claim upon which relief could be granted.

For the sake of completeness, I will take up defendant's contention that even if the requirement for making an immediate decision of payout options were held to be a significant detriment under 26 C.F.R. § 1.411(a)-11, the requirement would be permissible nonetheless because it is supported by a legitimate business reason, that of avoiding adverse selection.  Plaintiffs raise some negligible objections to the facts on this issue proposed by defendant, but the concept of adverse selection is a matter of common sense.  It occurs when plan members can make decisions on the bases of more concrete estimates of their actual life expectancies rather than the average life expectancies on which the lump sum calculation is

18

based.  A situation in which all plan participants would be allowed to put off making their payout elections (or to revisit their elections if they decide they are not as advantageous as hoped) would endanger the financial stability of the plans.  At a minimum, it would require entirely new actuarial calculations.   If those calculations resulted in reduced benefit payments, all plan participants would be disadvantages.  Defendant's decision to place a 90-day limit on the decision to take the lump sum distribution was reasonable in light of the need to protect the plans' financial health from this form of adverse selection, as well as from the effects of the adverse selection that would result if plan participants could tie their elections to rising interest rates.

This conclusion that plaintiffs have no standing makes it unnecessary to take up defendant's contentions that plaintiffs are barred from proceeding because they are not plan participants within the meaning of 29 U.S.C. § 1132(a) or because they did not exhaust their administrative remedies under the plans.

C. <u>Attorney Fees</u>

The only remaining question is whether defendant should be awarded attorney fees under 29 U.S.C. § 1132(g), which allows the court to award a reasonable attorney fee and costs to either party in any action brought under § 1132, with one exception not relevant to this case.  Plaintiffs oppose the motion and contend that they are the ones to whom fees

should be awarded.  Both sides cite <u>Herman v. Central States, S.E. and S.W. Areas Pension Fund</u>, 423 F.3d 684 (7th Cir. 2005), a case in which the court of appeals held that ERISA grants district courts the discretion to award attorney fees to either party, with a modest (and rebuttable) presumption in favor of making the award to the prevailing party.  <u>Id.</u> at 695-96.  According to the court of appeals, a district court may deny an award of fees to a successful defendant "'if the plaintiff's position was both "substantially justified"—meaning something more than non-frivolous, but something less than meritorious—and taken in good faith, or if special circumstances make an award unjust.'"  <u>Id.</u> (quoting <u>Harris Trust & Savings Bank v. Provident Life & Accident Ins. Co.</u>, 57 F.3d 608, 617 (7th Cir. 1995)).

Plaintiffs' law suit cannot be characterized as non-frivolous.  It rests upon a wholly unsubstantiated premise that a defined benefits retirement plan cannot legally make a lump sum distribution option available to its participants unless it gives the participants an open-ended period of time in which to choose between a lump sum distribution and other payment options.  The absence of any case law, statute or regulation to support plaintiffs' claim reinforces the conclusion that this is precisely the kind of case for which § 1132(g) was intended.  Accordingly, reasonable attorney fees and costs will be awarded to defendant for the necessary and reasonable amount of time and the costs it incurred in defending the case.


ORDER

20

IT IS ORDERED that the motion of defendants Retirement Plan for the District Managers of the American Family Insurance Group, Retirement Plan for Employees of American Family Insurance Group and American Family Mutual Insurance Company for summary judgment is GRANTED, as is their motion for an award of attorney fees, and costs, in an amount to be determined.  FURTHER, IT IS ORDERED that the motion of plaintiffs Jean McCarter, Dennis McCarter, Marjorie Czechowicz, Thomas W. Czechowicz, James J. Muck, Sherry Muck, Wayne C. Duddleston and Jean M. Duddleston for summary judgment is DENIED on the merits and their motion for class certification is DENIED as moot.

Defendants may have until December 4, 2007, in which to file an itemized statement of the attorney fees and costs incurred in defending this case.  Plaintiffs may have until December 18, 2007, in which to file their objections to the amounts sought.

Entered this 16th day of November, 2007.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

21