UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JEAN MCCARTER, DENNIS MCCARTER, MARJORIE CZECHOWICZ, THOMAS W. CZECHOWICZ, JAMES J. MUCK, SHERRY MUCK, WAYNE C. DUDDLESTON, and JEAN M. DUDDLESTON, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RETIREMENT PLAN FOR THE DISTRICT MANAGERS OF THE AMERICAN FAMILY INSURANCE GROUP, RETIREMENT PLAN FOR EMPLOYEES OF AMERICAN FAMILY INSURANCE GROUP, and AMERICAN FAMILY MUTUAL INSURANCE COMPANY,<br><br>Defendants. | Case No.<br>3:07-cv-00206-bcc |

## AFFIDAVIT OF ANDREW L. ORINGER

State of New York          )
                           ) ss.:
County of New York         )

Andrew L. Oringer, being sworn, states:

1. I am an attorney and a partner at the law firm of White & Case, where I am co-head of the U.S. Executive Compensation and Benefits Practice. I received my A.B. cum laude from Duke University in 1980 and my J.D. with distinction from Hofstra Law School in 1984. I also have an M.B.A. from Adelphi University. My legal practice for more than 20 years has been exclusively in the areas of employee benefits and executive compensation at major law firms located in New York City. I counsel clients regarding their employee benefit plans and programs, benefits-related tax matters, and fiduciary issues arising in connection with the investment of employee benefit plan assets. I am co-chair of the Employee Benefits Committee of the Tax Section of the New York State Bar Association (and on that Section's Executive Committee) and Chair of the Fiduciary Responsibility/Plan Investments Subcommittee of the Employee Benefits Committee of

the American Bar Association's Section of Taxation. I am also an Adjunct Professor of Law at Hofstra University School of Law, on the Advisory Board of the BNA Pension & Benefits Reporter (a leading advance sheet) and speak, publish and am quoted in the press with some frequency.

2.  I have reviewed the Complaint in this action along with the briefs submitted to this Court in connection with the parties' motions for summary judgment and the briefs submitted to the United States Court of Appeals for the Seventh Circuit on the appeal of this Court's decision granting summary judgment. I have also reviewed this Court's summary judgment decision and order and the decision of the Seventh Circuit in this case.

3.  It is my opinion that, at a minimum, Plaintiffs' claims are not frivolous and raise good-faith issues concerning the application of ERISA.

4.  Based on my experience, it is my view that issues are raised when a plan sponsor wishes to adopt a provision under which a participant's declining to consent to an immediate distribution – effectively resulting in an election to defer distribution – under a tax-qualified plan as contemplated by Section 411(a)(11) of the Internal Revenue Code of 1986, as amended (the "Code"), under the tax-qualification rules, and also under Section 203(e) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), under ERISA's substantive-law provisions, is made subject to the condition that the distribution must then be deferred to a specified time in the future, such as normal retirement date.

5.  The issues to which I refer would arise under the "significant detriment" rule of Section 1.411(a)-11(c)(2)(i) of the applicable Treasury Regulations, which states that consent to certain early distributions "is not valid if a significant detriment is imposed under the plan on any participant who does not consent to a distribution" and which further states that whether a significant detriment is imposed shall be determined "by examining the particular facts and circumstances."

2

6. I note that the U.S. Department of the Treasury expressly stated that these Treasury Regulations govern both the Code qualification provision (Code § 411(a)(11)) and the substantive ERISA provision (ERISA § 203(e)) at issue here. Regulatory Preamble, 53 Fed. Reg. 31, 837, 31,838-39; *see also* Reorg. Plan No. 4 of 1978, 3 C.F.R. 275 (1978), § 104 (allocating regulatory jurisdiction over the applicable ERISA provision to the Secretary of the Treasury).

7. I recall having taken note, not long after the issuance of the applicable regulations, of the "significant detriment" issue in the context of requiring the substantial deferral of a distribution, and further recall viewing the issue as a difficult one.

8. In 1995, with the issuance by the Internal Revenue Service (the "IRS") of Announcement 95-33, 1995-19 I.R.B. 14, my concerns were bolstered regarding whether a participant declining to consent to an early distribution as contemplated by Section 411(a)(11) of the Code and Section 203(e) of ERISA could be made to wait, under the "significant detriment" rule, until a date in the future (such as normal retirement date) to elect to receive the distribution. Section 614.131(2) of Announcement 95-33 states, as relevant here:

> (b) In order for the consent of the participant to be valid the participant must receive a description of the material features and an explanation of the relative values of the optional forms of benefit available under the plan. . . .
>
> > 1. A participant's consent to a distribution will not be valid if a significant detriment is imposed under the plan on the participant for not consenting to a distribution.
> >
> > 2. A significant detriment is created where a participant electing to defer receipt of a distribution is less favorable than other plan participants. The determination of what is a significant detriment to the participant is a facts and circumstances determination.

. . . .

3

(c) Following are examples of *disparate treatment between former participants and participants that result in a significant detriment to former participants.*

. . . .

> 3. Another situation resulting in a significant detriment to former participants is where, in general, the plan provides for immediate distributions upon termination of employment, but former participants electing to defer receipt of the distribution are not able to receive a distribution until they reach age 65.

(Emphasis added.)

9. One example of the possible operation of the "significant detriment" is illustrated in the multi-volume treatise, "The ERISA Outline Book - 2008 Edition" (TRI Pension Services), by Sal. L. Tripodi, citing Announcement 95-33, in Chapter 6.D.3.c(2), which expresses the view that the conditioning of a participant's deferral election on the participant's thereafter having to delay distribution to, for example, normal retirement date, runs afoul of the "significant detriment" requirement, as follows:

> Another example of significant detriment is a plan provision which requires a participant to wait until after normal retirement age for the next opportunity to elect distribution if the participant fails to elect distribution at the time his or her employment terminates.  In other words, if distribution is available to the participant when he or she terminates, but the participant elects to postpone distribution, there must also be a reasonable frequency with which the participant has the right to change his or her mind and elect a distribution during the period between the initial termination of employment and the participant's attainment of normal retirement age.

In my view, the foregoing passage illustrates the clear potential linkage between the "significant detriment" rule and an attempt to limit the conditions under which a participant's consent to an immediate distribution can be withheld

10. Although the issue specifically described in Announcement 95-33 is not precisely the one that plaintiffs in this case raised, the issue addressed there and the issue in this case is arguably comparable.  At a minimum, the discussion above underscores the potential concern that consent to an early distribution may be invalid if

4

it is conditioned on a "significant detriment," and underscores the concerns that ERISA practitioners may have regarding avoid running afoul of this rule. Here, the choice given to a participant was for the participant to receive a single-sum payment immediately, or to lose the right to receive the single-sum payment altogether while retaining the right to receive immediate distributions in other forms. I believe that the question of whether such a choice runs afoul of the principles underlying the IRS's reasoning in Announcement 95-33 is a close and difficult question without an obvious answer.

11. In my view, the "significant detriment issue" is fundamentally difficult in that it is expressly, under the applicable regulatory provisions, a facts-and-circumstances issue. Moreover, the IRS has described, to illustrate troublesome facts and circumstances, a situation arguably similar to the one in this case. I am not aware of a definitive court ruling prior to the rulings in this case regarding the applicability of the "significant detriment" rule to a plan that offers a distribution option only to participants taking immediate distribution, but not to participants who choose to defer their benefits. To me, the relevant open issues were – and remain – close ones. In my professional opinion, while the lawyers who brought this case may not have had a case in point on which to rely, the substantive theory of their case was, at a minimum, well within the range of reason. Indeed, the positions underlying Plaintiff's arguments in my view are consistent with a solid and (from the perspective of the plan sponsor) conservative interpretation of the Code and ERISA and the applicable regulations, and, notwithstanding the decisions by this court and the Seventh Circuit, with a position that the IRS, as the responsible regulator, or a different court, might take. Thus, in light of

the foregoing, I would view the Plaintiff's substantive arguments as being good-faith arguments which clearly are not frivolous.

_____
Andrew L. Oringer

Sworn to before me this
17th day of October, 2008

_____
Notary Public

JOHN M. OLIVIERI
NOTARY PUBLIC, State of New York
No. 02OLI6044749
Qualified in New York County
Commission Expires June 5, 2011